# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

KATIE SIMPSON                                                      PLAINTIFF

VS.                                          CASE NUMBER 1:05-CV-35-M-D

ECONOMY PREMIER ASSURANCE COMPANY                    DEFENDANT

## <u>ORDER</u>

This cause comes before the court on the motion of plaintiffs and defendants for partial summary judgment, pursuant to Fed. R. Civ. P. 56. Each party has responded to the other party's motion, and the court, being advised in the premises, concludes that the motions should be denied at this juncture.

This is a bad faith insurance action arising out of defendant Economy Premier Assurance Company's ("EPAC") denial of UM benefits in connection with an April 21, 2004 automobile-pedestrian accident on the campus of Middle Tennessee State University. The parties agree that plaintiff Katie Simpson, who had $100,000 in UM coverage through EPAC, suffered spinal compression fractures as a result of the negligence of underinsured motorist Ashleigh Bingham, who had $50,000 in liability coverage from Shelter Insurance Company ("Shelter"). The day after the accident, plaintiff's mother, Margaret Simpson, contacted the insurance agency in Corinth, Mississippi from which she had purchased the EPAC policy. Plaintiff asserts, and defendant does not deny, that EPAC adjuster Shaila Peddamatan then contacted Margaret and

254894.WPD

informed her that her daughter had $100,000 in UM coverage available.[1]

Plaintiff asserts, and defendant does not deny, the Margaret discussed and corresponded with Peddamatan regarding the $50,000 in available liability coverage from Shelter. Margaret and Peddamatan agreed that a full payment of the liability amount would soon be forthcoming from Shelter and that Margaret should inform Peddamatan by telephone once the settlement took place. Indeed, ECAP concedes in its brief that its agent Peddamatan "was informed by phone through an agent of Ms. Bingham's carrier, Shelter, that Shelter was in a position to tender $50,000 to Katie Simpson for her injuries resulting from the accident but had not received any medical bills or authorization from Katie Simpson."

On September 30, 2004, Shelter did in fact pay the $50,000 liability limits to plaintiff, who signed a release which covered "claims and damages of the undersigned." Plaintiff asserts, and defendant does not deny, that Margaret immediately tried to call Peddamatan and inform her of the settlement but that she was informed that EPAC had assigned her case to another agent, Keith Franzese. Plaintiff asserts that Franzese informed Margaret that he could only discuss the matter with Margaret's attorney. On October 8, 2004, Margaret served a written demand for coverage upon EPAC, and Franzese responded with a denial on the grounds that EPAC "was not given proper notice of the proposed settlement nor the opportunity to consider waiving subrogation or substituting payment prior to the acceptance, as required by both Tennessee statute and Economy Premier's policy language." Plaintiff filed suit against EPAC on December 16, 2004, and EPAC timely removed the case to this court on the basis of diversity jurisdiction.

---

[1] A $50,000 liability offset would presumably be available to defendant in this case under Mississippi law. *See State Farm Mut. Auto. Ins. Co. v. Kuehling*, 475 So. 2d 1159 (Miss. 1985).

254894.WPD

# ANALYSIS

Plaintiff seeks for this court to grant her summary judgment as to the issue of whether defendant should have paid her uninsured motorist benefits, while defendant seeks summary judgment as to plaintiff's claim for punitive damages. As an initial matter, this court agrees with plaintiff that Mississippi law applies to the interpretation of the UM insurance policy issued by EPAC in this case. Mississippi appellate courts have consistently held that Mississippi law should apply to the interpretation of insurance policies issued in this state, *see Baites v. State Farm*, 733 So.2d 320, 322 (Miss. App. 1998), and it is undisputed that the UM policy in this case was issued to plaintiff's mother in Corinth.

Defendant argues that "Tennessee law is controlling regarding the release entered into between the Simpsons and Shelter" and that, accordingly, "Tenn. Code Ann. § 56-7-1206 governs the actions of the parties." While the court does not rule out Tennessee law being consulted regarding the limited issue of the interpretation of the release between Shelter and plaintiff, the primary dispute in this case involves the issue of whether EPAC had a legal right to deny UM coverage based upon the absence of written notice of settlement. This issue involves an interpretation of a notice provision in a UM policy issued in this state, and Mississippi law should clearly govern this contractual dispute. At any rate, the Tennessee statute and the EPAC policy language in this case each required that written notice of any settlement be provided to EPAC, and it is thus apparent that the notice issue must be dealt with regardless.

From reading the parties' submissions, it appears that plaintiff has a much stronger case than EPAC regarding the notice issue and regarding her entitlement to UM benefits in this case. EPAC's agent Peddamatan clearly knew that settlement negotiations between Shelter and

plaintiff were nearing completion and EPAC does not deny that Peddamatan told plaintiff's mother that she need only call Peddamatan to inform her once a settlement was complete. Under these circumstances, it should be quite difficult for EPAC to argue that it did not waive written notice in this case. Indeed, it appears that plaintiff's mother did exactly what EPAC's agent asked her to do, and it seems very likely that plaintiff will eventually prevail on this issue, possibly at the directed verdict stage. At the same time, the court does not agree with plaintiff that the facts of this case are entirely clear. For example, plaintiff concedes that it is unclear whether the settlement which she entered into with Shelter served to waive EPAC's subrogation right, and this issue could prove to be of some significance in this case.

At any rate, the court's primary reluctance to grant plaintiff's motion for summary judgment at this juncture arises from the court's conclusion that defendant's motion for summary judgment on the punitive damages issue should be denied. Barring unexpected events, a trial in this case will be necessary regardless, and it should be apparent that this same testimony relevant to punitive damages issues should prove enlightening on the underlying liability issues as well. While it appears from the parties' briefs and exhibits that plaintiff has the much stronger case on the underlying liability issues, it is often the case that trial testimony and cross-examination reveals unexpected facts which may prove relevant to the court's analysis on this issue. It is certainly arguable that EPAC's actions in this case evidenced the sort of egregious misconduct which might make punitive damages appropriate, given that, to reiterate, defendant clearly had full knowledge of the pending settlement with Shelter and given that plaintiff's mother apparently did exactly what EPAC's agent told her to do, only to have her claim denied. On the other hand, it is true that plaintiff did not technically comply with her policy's requirement of

written notice, and it may be argued that this non-compliance renders punitive damages inappropriate.

Given the closeness of many of the issues in this case, the court is reluctant to decide the issues based solely upon the written submissions of the parties. The court therefore concludes that the better approach is simply to deny both parties' motions for partial summary judgment at this juncture and revisit the issue later, after the court has had an opportunity to consider the testimony at trial.

In light of the foregoing, it is ordered that plaintiff's motion for partial summary judgment [31-1] is denied and defendant's cross-motion [39-1] for partial summary judgment is likewise denied.

**SO ORDERED AND ADJUDGED**, this the 13th day of April, 2006.

                                           **/s/ Michael P. Mills**
                                           **UNITED STATES DISTRICT JUDGE**