# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

KATIE SIMPSON                                                                             PLAINTIFF

VS.                                                                      CASE NUMBER 1:05-CV-35-M-D

ECONOMY PREMIER ASSURANCE COMPANY                          DEFENDANT

## ORDER

Defendant's motion *in limine* to exclude "any and all testimony, documentation, evidence and argument of counsel" which was not produced in discovery will be dismissed for failure to specify evidence sought to be excluded. While defendant's arguments in favor of such exclusion may well be valid, this court utilizes motions *in limine* as a means of dealing with specific evidentiary matters which, due to complexity or to the potential for prejudice, should be dealt with before trial. Whatever its merits, defendant's motion does not meet these criteria and is essentially repetitive of well-established rules of evidence. This motion **[53-1]** is therefore dismissed.

Defendant's motion to prohibit any mention of settlement negotiations is likewise repetitive of established rules of evidence. While the court does not necessarily see the need to repeat the requirements of Federal Rule of Evidence 408, the court does note that plaintiff contends that she should be permitted to introduce evidence of discussions between herself and her mother and defendant's adjusters regarding her claim. The court will entertain more specific arguments on this issue at trial, but the court's inclination at this point is to conclude that the aforementioned discussions with defendant's adjuster constitute the subject of this bad faith

litigation and are not prohibited by Rule 408. The court will seek at trial to exclude any evidence of negotiations to settle the instant bad faith lawsuit while at the same time permitting plaintiff to introduce evidence of the facts giving rise to this lawsuit. Accordingly, the motion **[54-1]** will therefore be granted in part and denied in part, and the court will entertain more specific arguments in this regard at trial.

Defendant next seeks to exclude evidence of plaintiff's "anxiety, worry and emotional distress" due to insufficiency of proof of same. In analyzing this issue, this court would first note that Mississippi case law is to some extent conflicting regarding the level of proof needed in cases involving emotional distress resulting from simple negligence. In one line of cases, the Court has followed the view that when the defendant's conduct rises only to the level of simple negligence, the plaintiff must have some sort of physical manifestations of distress and/or demonstrable injury, whether it be physical or mental, in order to recover emotional distress damages. *See Mississippi Valley Gas Co. v. Walker*, 725 So. 2d 139, 149 (Miss. 1998). In another line of cases, however, the Supreme Court has indicated an intent to "relax" the standard of proof in emotional distress cases and permit recovery based on simple negligence, even when no such injury is established. *See e.g. Southwest Miss. Reg'l Med. Ctr. v. Lawrence*, 684 So. 2d 1257, 1269 (Miss.1996). It appears that the Supreme Court has recognized the ascendancy of the latter, more lenient, line of cases, as discussed in *Adams v. U.S. Homecrafters, Inc.*, 744 So.2d 736, 743 (Miss. 1999) ("Where, as here, the defendant's conduct amounts to simple negligence, we take this opportunity to clarify that we have moved away from the requirement of proving some physical injury in addition to the proof of reasonable foreseeability.").

While recognizing the inconsistencies in Mississippi's emotional distress jurisprudence, it

appears to this court that the emotional distress issue might become clarified somewhat in the event that the evidence establishes that the defendant in this case negligently and/or unreasonably denied plaintiff's insurance claim. In such cases, the Supreme Court has sanctioned the application of a separate tier of damages (often referred to as *Veasley* damages) which may include attorneys fees and emotional distress damages, even absent proof of the sort of outrageous conduct which might make punitive damages appropriate.

Specifically, the Supreme Court held in *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290 (Miss.1992) that:

> Applying the familiar tort law principle that one is liable for the full measure of the reasonably forseeable consequences of her actions, it is entirely forseeable by an insurer that the failure to play a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment. Some anxiety and emotional distress would ordinarily follow, especially in the area of life insurance where the loss of a loved one is exacerbated by the attendant financial effects of that loss. Additional inconvenience and expense, attorneys fees and the like should be expected in an effort to have the oversight corrected. It is no more than just that the injured party be compensated for these injuries.

*Veasley*, 610 So.2d at 295. It is thus clear that, in cases where an insurance claim was denied negligently and/or unreasonably, the Supreme Court has adopted a particularly low standard of proof for the recovery of emotional distress damages. In *Veasley*, the Supreme Court found that the plaintiff's claim for emotional distress caused by the insurance company's refusal to pay a life insurance claim was supported by her testimony that the company's conduct "... caused her worry, anxiety, insomnia, and depression." *Id.* Similar testimony has been found to be insufficient to establish a right to emotional distress damages in other contexts, s*ee, e.g. Adams,* 744 So.2d at 743-44, and it thus seems clear that the Supreme Court has been particularly willing to sanction emotional distress damages in the context of negligent denials of insurance claims.

3

The court does not suggest that plaintiffs who have had insurance claims unreasonably or negligently denied have an automatic right to recover emotional distress damages; clearly testimony or other evidence in support of such damages is required. However, the Supreme Court stated in *Veasley* that "[s]ome anxiety and emotional distress would ordinarily follow" from a negligent/unreasonable denial of an insurance claim, and it thus seems clear that, if plaintiff is able to establish such a wrongful denial of her insurance claim in this case, then she will find it easier to recover emotional distress damages than in certain other legal contexts. In light of the foregoing, the court will consider this issue again following the presentation of the evidence at trial, but at this juncture defendant's motion **[56-1]** will be denied.

Defendant's unopposed motion *in limine* **[57-1]** to prohibit mention of its net worth is granted as to the compensatory damages phase of trial.[1]

Defendant's motion **[52-1]** to bifurcate the compensatory and punitive damages phases of trial is clearly consistent with the provisions of Miss. Code. Ann. § 11-1-65 and is therefore granted.

Defendant's motion *in limine* to prohibit the introduction of plaintiff's unauthenticated medical records is denied. The Fifth Circuit Court of Appeals has held that:

> A trial judge is correct in allowing physical evidence to be presented to the jury as long as a reasonable jury could decide that the evidence is what the offering party claims it to be. ... Any question as to the authenticity of the evidence is then properly decided by the jury.

*U.S. v. Casto*, 889 F.2d 562, 568 (5th Cir. 1989). Thus, the Fifth Circuit has held that

---

[1] However, Miss. Code Ann. § 11-1-65(e) clearly requires the trier of fact to consider such evidence at the punitive damages stage of trial. The court does not prejudge whether such a punitive damages stage will be necessary in this case.

authentication is a jury issue, and, in order to submit the issue to the jury, plaintiff is only required to make a showing which would allow the jury to conclude that her medical bills were authentic. Moreover, the Mississippi Court of Appeals, interpreting a rule of evidence identical to Fed. R. Evid. 901, has held a plaintiff's testimony authenticating her medical records may be sufficient to authenticate medical records in this state.[2] *See Cassibry v. Schlautman*, 816 So.2d 398, 403 (Miss. App. 2002). If defendant has any evidence disputing the authenticity of plaintiff's medical records, then it should introduce such evidence at trial. However, it may not prohibit the introduction of such evidence without giving the court some reason to conclude that the plaintiff's testimony regarding their authenticity is unreliable. Defendant's motion *in limine* **[55-1]** is therefore denied.

The court will defer final ruling on defendant's motion *in limine* to exclude evidence of plaintiff's $400,000 limits of uninsured motorist coverage until trial. The court would note that defendant offers no authority in support of the proposition that this court should exclude insurance limits in the context of uninsured motorist, rather than liability, insurance. Without having been presented with any authority to the contrary, it appears to this court that a UM case is essentially a breach of contract action and that plaintiff should be able to prove the terms of the contract which she claims was breached. Moreover, plaintiff raises the seemingly valid point that she alleges misrepresentation of the amount of the policy limits on the part of an agent in this

---

[2]In addition, Miss. Code Ann. §41-9-119 is widely used in state court proceedings to permit the authentication of medical records. While the statute deals, on its face, with the evidentiary weight to be given to the evidence, it is this court's experience that it is often used to <u>authenticate</u> evidence as well. While the *Erie* doctrine provides that federal rules of evidence apply in federal court, it does not bar state statutes which are not inconsistent with federal rules.

5

case and that testimony regarding the amount of the UM limits is particularly relevant in this case.

The court tends to agree with plaintiff that evidence of the UM limits should be admissible, but it has reached no firm conclusion in this regard and will entertain more detailed arguments at trial. Defendant is encouraged to present any authority which might support its position on this issue. If the court does permit this evidence to be introduced, it may well grant a limiting instruction to ensure that the jury is aware of the fact that, regardless of applicable UM limits, UM benefits may not exceed the insured's damages resulting from the negligence of an uninsured motorist. At this juncture, the motion *in limine* **[58-1]** will be denied, but defendant may re-raise this issue at trial.

**SO ORDERED**, this the 8th day of September, 2006.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**